UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR05-0111S |
| | ) | |
| BRANDON SMITH | ) | |

---

DEFENDANT'S OBJECTION TO THE GOVERNMENT'S MOTION FOR AN UPWARD DEPARTURE

Mr. Smith objects to the government's request for an upward departure from the advisory sentencing guideline range in this matter contained in the PSR. It asserts that Mr. Smith's struggle during his arrest warrants this increase. The request lacks merit.

I. Departure Standard

In order to grant an upward departure, as requested by the government, the Court must find that the circumstances involved make the case distinct from other cases involving the same criminal conduct and thus remove it from the "heartland" of those offenses. *See United States v. Carrion-Cruz*, 92 F.3d 5, 6 (1st Cir. 1996); *see also United States v. Bogdan*, 284 F.3d 324, 327 (1st Cir. 2002). The guidelines obviously allow this type of departure, but expect that "any such circumstance will occur rarely and only in exceptional cases." U.S.S.G. § 5K2.0, App. Note 3(B)(i) (2005). In fact, though the percentage of sentences above the guideline range has doubled since *United States v. Booker*, it is still distinctly small group of 1.6% of all Federal sentences. U.S.S.C. Report to Congress: Final Report on the Impact of *United States v. Booker* on Federal Sentencing, 46 (March, 2006) (accessed at www.ussc.gov/booker_report). This is a very high standard and the government has the burden of proving how the facts in this case are not adequately taken into consideration by the guidelines. The government has failed to prove their allegation. Essentially, it is not unusual, or outside the heartland, for persons to resist arrest or for seized weapons to be loaded.

II. The Arrest

The facts surrounding this arrest are in dispute. Mr. Smith did not admit or agree with the facts suggested by the government in support of this motion. During his change of plea hearing, Mr. Smith admitted to possessing the weapon and does not retreat from his responsibility for his crime. He did not admit to pulling the gun out of his shorts and running across the street with it. In fact, civilian witness reports differ greatly from the government's version and do not support the notion that Mr. Smith did anything other than try to run away from the police into his home. Mr. Smith did not confront the police or threaten them with the weapon. Officer Sion banged Mr. Smith's head into the wall, injuring him, in an effort to disarm Mr. Smith. But then, according to civilian witnesses, Sion continued to assault Mr. Smith after he was cuffed and subdued. The defense is prepared to present testimony regarding the arrest at the sentencing hearing.

III. Argument

A. The Sentencing Guidelines

The guidelines adequately consider all of the facts and circumstances present in this case. The guideline, § 2K2.1, provides for felon in possession of a firearm offenses. It includes several base offense levels which vary on the type of weapon and the individual's prior criminal record. It also provides enhancements for a number of aggravating factors, including the number of weapons, obliterated serial numbers, connections to other felonies, and cross-references to other crimes. The probation officer applied these facts (from the prosecution version in ¶ 7 of the PSR) to the guidelines and computed the current advisory guideline range. *See* PSR ¶¶ 12-21 (offense level 12). None of the enhancements apply in this case. In fact, the probation officer concluded that the facts of this case did not warrant or support any departure, up or down, from the advisory range. PSR ¶ 60. Moreover, the guidelines do contemplate conduct constituting resisting arrest, and the probation department could have applied that cross reference here, U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers), if it made sense. It does not because the resulting offense level would be less than that already suggested in the PSR.[1] The government did not object to the PSR calculation. Clearly the

[1]The resulting offense level would be 11, one less than in the PSR. The guideline sets a BOL of 10 and then enhances by 3 point if there was physical contact. U.S.S.G. § 2A2.4(a) &

guidelines do adequately consider the facts present in this case, and the Court cannot impose a four point upward departure, or any amount, on the government's proffered basis.

B. The Heartland

The government alleges that Mr. Smith's possession of a loaded weapon and his resisting arrest take this case outside the heartland of felon in possession of a firearm cases. First and foremost, the guideline recognizes the inherent danger and concern of a convicted felon being in public in possession of a firearm. The danger faced by the officers in this case is not atypical. Regardless of which factual version the Court believes, Mr. Smith was obviously attempting to get away from Sion and Zincone. When surprised by them, he fled into his home. He did not stop and challenge the officers. He did not brandish and threaten to shoot the officers. And, he did not initiate the physical contact with the police. Sion forced his way into the house while Mr. Smith attempted to keep him out. Noella Smith, his mother, states that she heard banging and her son repeatedly crying for help from beyond the locked door. When Sion opened the door, Noella Smith saw her handcuffed son bleeding from the head and watched as Sion continued to assault Mr. Smith. These facts do not present any extraordinary danger for the police at the hands of Mr. Smith.

A survey of Federal Public Defender cases here in Rhode Island District Court shows this case, absent police misbehavior after the arrest, most typical. The survey revealed 31 cases involving 18 U.S.C. § 922(g) from March, 2003, to the present.[2] Only one case involved an unloaded weapon. More than one third involved resisting arrest or flight from the police, and all of those cases included loaded firearms. This brief survey shows that Mr. Smith's case is statistically average and well within the heartland of felon in possession cases. The government has failed to distinguish this case from this heartland.

---

(b). Thus an offense level of 13 minus 2 points for Mr. Smith's acceptance of responsibility. The Court should note that the other enhancements under this guideline do not factually apply, and a strong argument could be made that the three point enhancement for physical contact perhaps should not apply because the officers initiated the contact in this case.

[2]The Federal Defender has handled many more cases involving firearms during this time period and specifically excluded 18 U.S.C. § 924(c) cases, drug trafficking cases, and 18 U.S.C. § 922(g) cases where the weapons were not located on the person or in the presence of the defendant.

C. Culpability

Culpability should occupy a primary spot in the Court's sentencing considerations. The government asks for a 4 point upward departure, but does not support this request with any kind of case law, statute, or precedent. In fact, the 4 points appears arbitrary. In its motion, the government asks for the upward departure, but then, in the next sentence, indicates that it should be even more. Conversely, the government did not think that this case warranted an upward departure during plea negotiations. The government offered in the plea agreement to recommend a sentence within the advisory guideline range. Nothing about this case has changed since that initial offer. Mr. Smith chose not to enter the agreement, but still timely entered a plea of guilty to this offense and properly accepted responsibility for his misconduct. The facts which caused the government to initially offer a guideline sentence are exactly the same as those which now cause the request for the upward departure. Mr. Smith's culpability remains a constant and therefore the government's request for a departure is not warranted.

IV. Consideration Under § 3553(a)

The government's argument that the Court should consider this motion under 18 U.S.C. § 3553(a) is misplaced. Departure arguments and aggravating and mitigating arguments under § 3553(a) are truly apples and oranges. While the nature and circumstances of the offense can apply to a sentencing variance, it does not appear that the Court could grant a departure based on § 3553(a) considerations. The Court is surely free to consider, and the government is free to argue, those factors for a sentence outside of the guidelines, as the defense has already done, but that is a separate matter from the government's motion here.

V. Conclusion

The government bears the high burden of proving that the facts present here remove Mr. Smith's culpable conduct out of the heartland of felon in possession of a firearm cases. In fact, Mr. Smith's case is most typical. Many firearm possession cases involve some form of resisting arrest, and almost all involve loaded weapons. Mr. Smith did not confront the police or threaten them with the gun; he tried to flee into his home. In response, Officer Sion grabbed Mr. Smith, banged his head

into the wall, and continued to assault him after he was cuffed and subdued. The police misconduct in this arrest is the only atypical fact present in this case sufficient to warrant a departure. The Court cannot grant this motion because the government has failed to sustain their burden of proof. Mr. Smith's conduct does not rise to the level of the 1.6% of Federal cases receiving a sentence above the advisory guideline range.

Respectfully Submitted
Brandon Smith,
By and through his counsel

Kevin J. Fitzgerald
Assistant Federal Defender

Certification

I hereby certify that I caused this motion to be delivered to AUSA Zechariah Chafee, 50 Kennedy Plaza, 8th Floor, Providence 02903, and USPO Kristin Mattias, 36 Exchange Terrace, Providence 02903, on this the 8th day of May, 2006.